STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**December 1, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: P.A., D.A., and E.A.

**Nos. 17-0715 and 17-0735** (Logan County 16-JA-57, 16-JA-58, & 16-JA-59)

## MEMORANDUM DECISION

Petitioner Father K.A., by counsel Ashley Cochran, and Petitioner Mother I.A., by counsel James Alexander Meade, appeal the Circuit Court of Logan County's July 20, 2017, order terminating their parental rights to P.A., D.A., and E.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Rebecca Mick filed a response on behalf of the children. In these consolidated appeals, petitioners argue that the circuit court erred in denying them post-dispositional improvement periods and in terminating their parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2016, the DHHR filed an abuse and neglect petition against petitioners, who are the adoptive parents of the children. The DHHR alleged that it received a referral that the parents were physically abusive and Petitioner Mother screamed at the children frequently. Specifically, the DHHR alleged that D.A. accidentally soiled himself on the bus and that, in response, Petitioner Mother dragged the child off the bus and began hitting him on his back and legs. The DHHR also alleged that a Child Protective Services ("CPS") worker interviewed the children at school after P.A. was injured and reported that he did not want to go home for fear that Petitioner Mother would be angry. Two of the children showed the CPS worker bruises they claimed came from being "whipped" by their father. The children reported that Petitioner Mother knew about the injuries as she had been attempting to treat them with a medicinal cream. D.A. reported that he felt scared when petitioners were mad because he knew he would be whipped. The DHHR further alleged that petitioners' neighbor reported that Petitioner Mother admitted to putting the children in the corner of a room for hours and that Petitioner Father admitted that he

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

"would rather the children not be there." The neighbor also stated that petitioners smacked the children with a paint stirrer, which had the name "Big Joe" or "Big Bad John" painted on it. Finally, the DHHR alleged that the family had a history of referrals that involved past physical abuse of children they have fostered. Thereafter, Petitioner Mother filed an answer to the petition in which she denied the allegations regarding any conduct that constituted abuse and neglect.

Petitioners underwent psychological evaluations in January of 2017. The evaluating psychologist for Petitioner Father noted that he received extensive training prior to becoming a foster parent and continued to receive annual training after becoming an approved foster parent. The psychologist noted that, despite this continued training, Petitioner Father failed to benefit from it. The psychologist noted that Petitioner Father may comply with services on a surface-level by going through the motions in order to appease the DHHR and the circuit court, but the likelihood of services rectifying the conditions of abuse and neglect was virtually non-existent. The psychologist concluded that there was no reasonable likelihood of services correcting Petitioner Father's parenting and thus offered no recommendations. Regarding Petitioner Mother, the psychologist noted that she had significant parenting shortcomings despite being trained as a foster parent and after being investigated in the past for similar issues. The psychologist noted that Petitioner Mother lacked either the willingness or the capacity to change her parenting techniques and concluded that her prognosis for improved parenting was non-existent. In light of this, additional services were not recommended.

Petitioner Father filed an answer to the petition in March of 2017, in which he admitted to "engaging in excessive discipline against [the children.]" Petitioner Mother also filed an amended answer in which she admitted to engaging in excessive acts of corporal discipline against the children. Petitioners then filed motions for post-adjudicatory improvement periods.

In April of 2017, the circuit court held an adjudicatory hearing during which petitioners admitted to using excessive corporal discipline on the children. The circuit court found that, based on petitioners' admissions, the children were abused and/or neglected. The circuit court also found that petitioners were previously trained on the appropriate types and methods of discipline to use as foster/adoptive care providers and that they were either unwilling or unable to change the manner in which they chose to discipline the children. Further, the circuit court noted that the psychological evaluations for petitioners indicated that their abilities to improve their parenting were extremely limited. Specifically, petitioners' reports indicated that the likelihood of services rectifying the conditions of abuse and neglect was non-existent. As such, the circuit court found that petitioners failed to show by clear and convincing evidence that they were likely to participate in an improvement period and denied their motion for post-adjudicatory improvement periods.

In June of 2017, the circuit court held a dispositional hearing. Prior to the hearing, petitioners filed a joint motion for post-dispositional improvement periods. Petitioners noted that they had begun marital counseling, unprompted by the DHHR, which included conflict resolution and anger management in relation to domestic violence. The circuit court heard the testimony of two service providers, who testified that petitioners participated in the parenting skills classes and visitation with the children. According to the witnesses, petitioners made some small improvements. The DHHR objected to petitioners' request for improvement periods,

stating that the psychological evaluations concluded that petitioners would not be able to improve their parenting, even were services offered. The circuit court ultimately found that petitioners failed to show by clear and convincing evidence that they would comply with an improvement period and thus denied their motion.

The circuit court then heard evidence regarding the DHHR's motion to terminate petitioners' parental rights. A CPS worker testified that the DHHR recommended termination of petitioners' parental rights based upon moving the case forward without an improvement period; the case plan, which was based upon the allegations contained in the petition; and the severity of the allegations in the petition. The CPS worker testified that the reports of the service providers were not considered in making the decision to recommend termination. Petitioners called no witnesses. The circuit court found that there was no reasonable likelihood that the conditions of abuse and/or neglect could be corrected and that termination of petitioners' parental rights was necessary for the children's welfare. Specifically, the circuit court noted that petitioners had undergone extensive training in order to become foster parents. Further, petitioners initially denied using any sort of physical discipline, which was contrary to the testimonial and physical evidence in the record. Only after undergoing the psychological evaluations did petitioners admit to any use of excessive physical discipline. The circuit court found this aligned with the conclusions of the evaluating psychologist, who specifically stated that Petitioner Father would superficially comply to appease the DHHR and the circuit court. The circuit court also found that petitioners were arrested on charges related to the petition and eventually pled guilty to domestic battery, admitting that they struck and caused physical injury to the children. Ultimately, the circuit court terminated petitioners' parental rights to the children.[2] It is from this July 20, 2017, dispositional order that petitioners appeal.

This Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

---

[2]According to the DHHR, the permanency plan for the children is adoption in their current foster home.

On appeal, petitioners argue that the circuit court erred in denying their motion for post-dispositional improvement periods. We disagree. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, the record indicates that petitioners failed to demonstrate their ability to fully participate in an improvement period. While the service providers testified that petitioners had made some improvements, the circuit court was ultimately persuaded by the psychological evaluation reports, which concluded that petitioners' parenting skills would not be improved with services. In fact, the reports indicated that petitioners' prognoses for improved parenting were non-existent. The psychologist noted that Petitioner Father may comply with services in order to appease the circuit court, but ultimately, there was no reasonable likelihood that his parenting would improve with services. Further, the psychologist noted that, given the level of physical abuse the children experienced in Petitioner Mother's care, any child placed in her care was in "grave danger from her deliberate physical abuse" and the potential for significant harm from poor decision-making and incompetence. While petitioners argue that granting them post-dispositional improvement periods would have been in the children's best interest, the psychologist concluded that alternate placement was in their best interests. Accordingly, we find no error in the circuit court's decision denying petitioners post-dispositional improvement periods.

Moreover, we find no error in the termination of petitioners' parental rights. West Virginia Code § 49-4-604(b)(6) directs circuit courts to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(5), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which

> "[t]he abusing parent or parents have repeatedly or seriously injured the child physically or emotionally . . . and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child[.]"

In the present case, the circuit court found that there was no reasonable likelihood that the conditions of abuse or neglect could be corrected due to petitioners' use of excessive physical discipline. Specifically, the circuit court found that petitioners had been previously arrested and charged with the felony offense of child abuse resulting in injury. Further, in May of 2017, petitioners pled guilty to the charge of domestic battery wherein they admitted to striking and

causing physical injury to the children. The record is clear that the DHHR received several referrals due to petitioners' excessive physical discipline of the children that they have adopted or fostered, despite receiving extensive training in order to become and maintain their status as foster parents. As such, like the circuit court, we find that the potential for further abuse is so great as to preclude the use of resources to mitigate or resolve these family problems. Further, the circuit court correctly terminated petitioners' parental rights upon finding that there was no reasonable likelihood that the conditions of abuse and/or neglect could be corrected and that termination was in the children's best interests.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 20, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  December 1, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker